# IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF ALABAMA
### SOUTHERN DIVISION

RECEIVED

2005 NOV 15 P 2: 09

DEBRA P. HACKETT, CLK
U.S. DISTRICT COURT
MIDDLE DISTRICT ALA.

| | |
|---|---|
| PRECISION CPAP, INC.; <br> MEDICAL PLACE, INC.; PHASE III <br> VANS, INC., d/b/a EAST MEDICAL <br> EQUIPMENT AND SUPPLY; and <br> MED-EX, <br><br>            Plaintiffs. <br><br> v. <br><br> JACKSON HOSPITAL; MED-SOUTH, <br> INC.; JMS HEALTH SERVICES, L.L.C.) <br> d/b/a JACKSON MED-SOUTH HOME <br> HEALTH, L.L.C.; BAPTIST HEALTH, <br> INC.; AMERICAN HOME PATIENT, <br> INC; BAPTIST VENTURES - <br> AMERICAN HOME PATIENT; <br><br>            Defendants. | ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> )     Civil Action No. <br> ) <br> )     2:05CV1096- C <br> ) <br> )     **JURY TRIAL DEMAND** <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) |

## COMPLAINT

Plaintiffs Precision CPAP, Inc.; Medical Place, Inc.; Phase III Vans, Inc.,

db/a/ East Medical Equipment and Supply, and Med-Ex, state the following at their

Complaint in this action.

## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF ALABAMA
## SOUTHERN DIVISION

| | | |
|---|---|---|
| **PRECISION CPAP, INC.;** | ) | |
| **MEDICAL PLACE, INC.; PHASE III** | ) | |
| **VANS, INC., d/b/a EAST MEDICAL** | ) | |
| **EQUIPMENT AND SUPPLY; and** | ) | |
| **MED-EX,** | ) | |
| | ) | |
| **Plaintiffs.** | ) | **Civil Action No.** |
| | ) | |
| | ) | |
| **v.** | ) | **JURY TRIAL DEMAND** |
| | ) | |
| **JACKSON HOSPITAL; MED-SOUTH,** | ) | |
| **INC.; JMS HEALTH SERVICES, L.L.C.)** | | |
| **d/b/a JACKSON MED-SOUTH HOME** | ) | |
| **HEALTH, L.L.C.; BAPTIST HEALTH,** | ) | |
| **INC.; AMERICAN HOME PATIENT,** | ) | |
| **INC; BAPTIST VENTURES -** | ) | |
| **AMERICAN HOME PATIENT;** | ) | |
| | ) | |
| **Defendants.** | ) | |

## COMPLAINT

Plaintiffs Precision CPAP, Inc.; Medical Place, Inc.; Phase III Vans, Inc.,

db/a/ East Medical Equipment and Supply, and Med-Ex, state the following at

their Complaint in this action.

## I. JURISDICTION AND VENUE

1.    This Court has jurisdiction over this controversy under Federal

question jurisdiction, 28 U.S.C. § 1331, because of the antitrust claims brought pursuant to 15 U.S.C. §§1, 2, 15 and 26.

2.    Venue is proper in this District under 28 U.S.C. § 1391(b) because this is a judicial district in which a substantial part of the acts giving rise to the claim occurred.

## II.  PARTIES

3.    Plaintiff, Precision CPAP, Inc. ("Precision CPAP"), is an Alabama corporation engaged in the durable medical equipment ("DME") business in Montgomery, Alabama. Generally speaking, the one business is the provision of medical devices needed for care in the homes of patients after discharge from the hospital. The equipment is usually leased and include items such as hospital beds, walkers, wheelchairs, oxygen, and other durable medical devices. Precision CPAP is not a "full-line" DME provider, but specializes in the provision or respiratory therapeutic services. For purposes of this Complaint, the respiratory therapeutic services provided by Precision CPAP are included in the general term "DME".

4.    Plaintiff The Medical Place, Inc. ("The Medical Place") is an Alabama corporation in the DME business in Montgomery, Alabama. The Medical Place is a "full line" DME supplier.

5.    Plaintiff, East Medical an Alabama corporation engaged in the DME

2

business in Montgomery, Alabama, and is also a "full line" DME supplier.

6.     Plaintiff Med-Ex is an Alabama corporation formerly engaged in the DME business in Montgomery, Alabama.  Med-Ex sold the assets of the business. Prior to that sale, as outlined below, Med-Ex had suffered a great loss in revenue due to the practices of Defendants outlined below.  Another result of the practices outlined below is that the price of the assets sold was depressed due to the drop in revenues immediately prior to sale.

7.     Defendant Jackson Hospital is a hospital operating in Montgomery County, Alabama.

8.     Defendant Med-South, Inc., is a company that is in the DME business in the State of Alabama.

9.     Defendant Jackson-MedSouth HME, L.L.C. ("Jackson-MedSouth") is an Alabama Limited Liability Company.  The  members, or owners, of Jackson-MedSouth are Jackson Hospital and Med-South, Inc.

10.     Defendant Baptist Health is an Alabama corporation that operates Baptist Medical Center and Baptist Medical Center East in Montgomery, Alabama and Prattville Baptist Hospital in Prattville, Alabama.

11.     Defendant American Homepatient, Inc., is a corporation engaged in the DME business.  American Homepatient, Inc., has entered into a joint venture with

3

Baptist Health to operate Baptist Ventures-American Home Patient.

12.     Baptist Venture-American Homepatient ("Baptist/American Homepatient DME") is a joint venture between Baptist Health, Baptist Ventures and American Homepatient. This joint venture is in the DME business in Montgomery, Alabama.

## III. FACTS

13.     Defendants Baptist Health and Jackson Hospital operate hospital facilities in Montgomery and Prattville, Alabama. These two defendants are the source of primary hospital services for the majority of residents in the Montgomery, Alabama area.

13.     Upon discharge from one of the hospital defendants' facilities, many patients need continuing nursing care, medical services, and durable medical equipment. Some equipment and services are provided by DME carriers such as Plaintiffs.

14.     Plaintiffs provide home health care services and home health care equipment to patients in Montgomery and Prattville, Alabama. Plaintiffs compete in the DME business in and around Montgomery, Alabama. In particular, Plaintiffs compete in the market to provide patients discharged from Jackson Hospital and Baptist Health's hospital facilities with their DME needs.

4

15.    Prior to the entry of "Captive DME's" into the market place, Plaintiff DME providers were able to market themselves to hospital staff and patients whose discharge was imminent from the Defendant hospitals.

16.    If there was no patient choice of a DME provider made by the hospital patients, prior to the formation of Jackson-MedSouth and Baptist/American Homepatient DME, when a patient was discharged, the patient was assigned on a rotational basis to one of the home health care agencies such as Plaintiffs', to arrange for that patient's home health care needs.

17.    The custom and practice had been that when a patient was assigned a DME provider, either through the above-referenced assignment process, or through a specific request for a particular company, any durable medical equipment subsequently needed by the patient/customer would be leased from the same company.

18.    In the late 1990's Jackson and MedSouth formed Jackson-MedSouth, and entered into the DME market. Similarly, Baptist Health, Baptist Ventures and American Homepatient, Inc., entered into a joint venture, creating Baptist/American Homepatient DME for the purpose of entering into the DME market and competing with Plaintiffs.

19.    Jackson, Med-South and Baptist/American Homepatient, DME, are

5

captive DME providers. That is, they are both owned and operated, and profits derived by, Baptist Health and Jackson Hospital.

21. Following the entry by Defendants into the DME market through the above-referenced entities, the Jackson Hospital and the Baptist Health hospitals ceased the rotational assignment of patients to DME providers. Instead, Defendants begin directing and/or assigning such patients to their captive DME companies, and excluding Plaintiffs the market of hospital patients discharged from the hospitals.

22. For example, in the case of Jackson-MedSouth, hospital staff was specifically directed to refer all hospital patients to Jackson-MedSouth. In a July 7, 2003 memo, hospital staff was informed that, "Only if the patient chooses another company, or it is an emergency should the patient be referred to another company." The economic incentive for Jackson to take this action is obvious, and the above-referenced memo confirms the purpose of these actions. The memo states, "Please keep this in mind. CPAP's we outsource effect our bottom line in the long run . . . remember, we are only hurting ourselves if we don't send to JMS when possible." Similar measures were taken by Baptist Health to ensure that discharged hospital patients were directed to its captive DME supplier.

23. Following the entry by Defendants into the DME market, Defendants have combined, contracted and/or conspired to create a monopoly and foreclose all

6

vendors of DME from competing in the market for the provision of durable medical equipment to discharged hospital patients leaving Baptist Health and Jackson hospital facilities.

24.    Baptist East personnel have told Plaintiffs that they have an "obligation" to refer patients only to Baptist/America Homepatient DME. A representative for East Medical was specifically told this  when the representative was attempting to market the company's services to hospital personnel responsible for managing DME referrals.  Other plaintiffs have experienced very similar rebukes to their attempt to market within the hospitals.

25.    Following the entry by Defendants into the DME market, Defendants have engaged in a pattern of communications and actions foreclosing competition within the relevant market. That is, foreclosing competition for the business of release or discharged hospital patients from Baptist Hospital and Baptist Health's hospital facilities.

26.    In cases where the DME services are not covered by Medicare, the monopolistic practices of Defendants has foreclosed competition, and will lead to higher prices.  In the case where Medicare pays for the equipment, a lack of competition will eventually erode the services offered by the companies.  Because there will be no competition, the consumers of durable medical equipment will not

7

be provided the level of service that a free and fair market would provide.

27. Following the entry by Defendants into the DME market, and as a result of the improper conduct related above, Plaintiffs have suffered a loss of revenue. In the case of Med-Ex, not only did the company lose revenues, but the sale price of the business was depressed.

## IV. CAUSES OF ACTION

## COUNT I

## RESTRAINT OF TRADE - COERCIVE RECIPROCITY

28. Plaintiffs repeat and reallege each and every allegation contained in paragraphs 1 through 27 above.

29. This count arises under Section 1 of the Sherman Act, 15 U.S.C. § 1, and Sections 4 and 16 of the Clayton Act, 15 U.S.C. §§ 15 and 26.

30. The contracts, combinations and/or conspiracies by and among Defendants whereby Defendant hospitals allocate the assignment of patients whose discharge is imminent, to their captive DME providers constitutes a coercive reciprocity agreement in violation of Section 1 of the Sherman Act, 15 U.S.C. § 1.

31. The hospital defendants have exclusive control of a substantial share of patient referrals and, accordingly, have the power to otherwise unduly influence the patients, doctors, nursing homes or home health care agents' selection or

8

recommendation of durable medical equipment vendors.

32.    Defendants continue to unlawfully exercise said power to coerce, pressure or otherwise unduly influence the patients, doctors, nursing homes and home health care agents to select or recommend only the captive DME companies to the exclusion of Plaintiffs.

33.    As a direct and proximate result of the said coercive reciprocity agreement, Plaintiffs have been injured in their business and property in that they and all other competitors in the durable medical equipment leasing market have been foreclosed from doing business with patients discharged from Defendants hospitals.

34.    The contracts, combinations and/or conspiracies among the Defendants seriously threatening irreparable harm in that all present competitors of Defendants will be driven out of business thereby creating an absolute and permanent monopoly for Defendants in the DME market.

WHEREFORE, Plaintiffs pray that this Court enter judgment in their favor:

(a)    enjoining Defendants from further combining, contracting, conspiring or otherwise coercing or forcing the utilization of Defendants to the exclusion of all other competitors in the durable medical equipment leasing market;

(b)    ordering Defendants to cease and desist from all activities or communications designed to force or coerce the home health care agencies, nursing homes, doctors and patients to deal exclusively with the captive DME providers;

9

(c)  ordering Defendants to assign discharged patients to the respective home health care agencies in the area on a nondiscriminatory and nonpreferential basis;

(d)  awarding Plaintiffs treble their actual damages sustained as a direct and proximate cause of the aforesaid antitrust violations;

(e)  awarding Plaintiffs reasonable attorneys' fees;

(f)  awarding Plaintiffs costs of court; and

(g)  granting all other relief the Court deems just and proper.

## COUNT II

### CONCERTED REFUSAL TO DEAL

35.   Plaintiffs repeat and reallege each and every allegation contained in paragraphs 1 through 34 above.

36.   This is an action under Section 1 of the Sherman Act, 15 U.S.C. § 1, and Sections 4 and 16 of the Clayton Act, 15 U.S.C. §§ 15 and 26.

37.   The contracts, combinations and/or conspiracies by and among Defendants whereby Defendants have agreed or otherwise acted in concert to the exclusion of all other competitors in the durable medical equipment leasing market constitutes a concerted refusal to deal with Plaintiffs in violation of Section 1 of the Sherman Act, 15 U.S.C. § 1.

38.   As a direct and proximate result of the aforesaid concerted refusal to

deal, Plaintiffs have been injured in their business and property in that they have been foreclosed from doing business with patients discharged from Defendant hospitals. Jackson Hospital and the Baptist Health hospitals.

39.    The contracts, combinations and/or conspiracies by and among Defendants seriously threatens irreparable harm in that all present competitors of Defendants in the DME market for patients discharged from Jackson Hospital and the Baptist Health hospitals will be driven out of business, thereby creating an absolute and permanent monopoly for Defendants in the DME leasing market.

WHEREFORE, Plaintiffs pray this Court enter judgment in their favor:

(a)    enjoining Defendants from further combining, contracting, conspiring or otherwise coercing or forcing the utilization of Defendants to the exclusion of all other competitors in the durable medical equipment leasing market;

(b)    ordering Defendants to cease and desist from all activities or communications designed to force or coerce the home health care agencies, nursing homes, doctors and patients to deal exclusively with the captive DME providers;

(c)    ordering Defendants to assign discharged patients to the respective home health care agencies in the area on a nondiscriminatory and nonpreferential basis;

(d)    awarding Plaintiffs treble their actual damages sustained as a direct and proximate cause of the aforesaid antitrust violations;

(e)    awarding Plaintiffs reasonable attorneys' fees;

11

(f)    awarding Plaintiffs costs of court; and

(g)    granting all other relief the Court deems just and proper.

## COUNT III
## MONOPOLIZATION

40.    Plaintiffs repeat and reallege each and every allegation contained in paragraphs 1 through 39 above.

41.    This is an action under Section 2 of the Sherman Act, 15 U.S.C. § 2, and Sections 4 and 16 of the Clayton Act, 15 U.S.C. §§ 15 and 26.

42.    The relevant product market in this case is the durable medical equipment market for patients discharged from Jackson Hospital and the Baptist Health hospitals.

43.    Defendants have engaged in a series of unlawful and wrongful activities and communications designed and succeeding to wilfully establish and maintain Defendants as a monopoly power in the durable medical equipment market.

44.    Defendants possesses monopoly power in the durable medical equipment leasing market for patients discharged from the above-referenced hospitals.

45.    As a direct and proximate result of said acts of monopolization, Plaintiffs have been injured in their business and property in that they and all other

12

competitors in the durable medical equipment leasing market have been foreclosed from doing business in the said market.

46.    The above-described acts of monopolization threaten serious and irreparable harm to the durable medical equipment leasing market defined above in that all present competitors of Defendants are being forced out of business thereby creating an absolute and permanent monopoly for Defendants.

WHEREFORE, Plaintiffs pray this Court enter judgment in their favor:

(a)    enjoining Defendants from further combining, contracting, conspiring or otherwise coercing or forcing the utilization of Defendants to the exclusion of all other competitors in the durable medical equipment leasing market;

(b)    ordering Defendants to cease and desist from all activities or communications designed to force or coerce the home health care agencies, nursing homes, doctors and patients to deal exclusively with the captive DME providers;

(c)    ordering Defendants to assign discharged patients to the respective home health care agencies in the area on a nondiscriminatory and nonpreferential basis;

(d)    awarding Plaintiffs treble their actual damages sustained as a direct and proximate cause of the aforesaid antitrust violations;

(e)    awarding Plaintiffs reasonable attorneys' fees;

(f)    awarding Plaintiffs costs of court; and

(g)    granting all other relief the Court deems just and proper.

13

## COUNT V

## ATTEMPTED MONOPOLIZATION

47.    Plaintiffs repeat and reallege each and every allegation contained in paragraphs 1 through 46 herein above.

48.    This is an action under Section 2 of the Sherman Act, 15 U.S.C. § 2 and Section 4 and 16 of the Clayton Act, 15 U.S.C. §§ 15 and 26.

49.    The relevant product market to this cause is the durable medical equipment leasing market.

50.    The relevant geographic market to this cause is patents that are discharged from the Defendant hospitals.

51.    Defendants have engaged in a series of unlawful and wrongful activities and communications designed and specifically intended to wilfully acquire or maintain for Defendants monopoly power in the durable medical equipment leasing market.

52.    The above-described acts of attempted monopolization were and are specifically intended to achieve monopoly power for Defendants in the durable medical equipment leasing market in the above-referenced market.

53.    Defendants possess sufficient market power in the relevant market such that the aforesaid exclusionary acts create a dangerous probability of actual

14

monopolization.

54.    As a direct and proximate result of said acts of attempted

monopolization, Plaintiffs have been injured in their business and property in that

they have been substantially foreclosed from doing business in said market.

55.    The above-described acts of attempted monopolization threaten serious

and irreparable harm to the durable medical equipment leasing market for patients

discharged from the Defendant hospitals in that all present competitors are being

forced out of business thereby creating an absolute and permanent monopoly for

Defendants in the durable medical equipment leasing market.

WHEREFORE, Plaintiffs pray this Court enter judgment in their favor:

(a)    enjoining Defendants from further combining, contracting, conspiring or otherwise coercing or forcing the utilization of Defendants to the exclusion of all other competitors in the durable medical equipment leasing market;

(b)    ordering Defendants to cease and desist from all activities or communications designed to force or coerce the home health care agencies, nursing homes, doctors and patients to deal exclusively with the captive DME providers;

(c)    ordering Defendants to assign discharged patients to the respective home health care agencies in the area on a nondiscriminatory and nonpreferential basis;

(d)    awarding Plaintiffs treble their actual damages sustained as a direct and proximate cause of the aforesaid antitrust violations;

(e)    awarding Plaintiffs reasonable attorneys' fees;

(f)    awarding Plaintiffs costs of court; and

(g)    granting all other relief the Court deems just and proper.

## COUNT VI
## CONSPIRACY TO MONOPOLIZE

56.    Plaintiffs repeat and reallege each and every allegation contained in paragraphs 1 through 54 above.

57.    This is an action under Section 2 of the Sherman Act, 15 U.S.C. § 2 , and Sections 4 and 16 of the Clayton Act, 15 U.S.C. §§ 15 and 16.

58.    The relevant product market in this case is the durable medical equipment leasing market.

59.    The relevant geographic market in this case is patients who are discharged from the Defendant hospitals.

60.    Defendants have contracted, combined and conspired in a series of unlawful and wrongful  activities and communications with the specific intent to acquire or maintain for Defendants monopoly power in the durable medical equipment leasing market in violation of Section 2 of the Sherman Act, 15 U.S.C. § 2.

61.    As a direct and proximate result of said conspiracy to monopolize,

16

Plaintiffs have been injured in their business and property in that they and all other competitors in the durable medical equipment leasing market have been foreclosed from doing business in the said market.

62.     The above-described acts of conspiracy to monopolize threaten serious and irreparable harm to the durable medical equipment leasing market in the above-reference market in that all present competitors of Defendants are being forced out of business thereby creating an absolute and permanent monopoly for Defendants in the durable medical equipment leasing market.

WHEREFORE, Plaintiffs pray this Court enter judgment in their favor:

(a)    enjoining Defendants from further combining, contracting, conspiring or otherwise coercing or forcing the utilization of Defendants to the exclusion of all other competitors in the durable medical equipment leasing market;

(b)    ordering Defendants to cease and desist from all activities or communications designed to force or coerce the home health care agencies, nursing homes, doctors and patients to deal exclusively with the captive DME providers;

(c)    ordering Defendants to assign discharged patients to the respective home health care agencies in the area on a nondiscriminatory and nonpreferential basis;

(d)    awarding Plaintiffs treble their actual damages sustained as a direct and proximate cause of the aforesaid antitrust violations;

(e)    awarding Plaintiffs reasonable attorneys' fees;

17

(f)     awarding Plaintiffs costs of court; and

(g)     granting all other relief the Court deems just and proper.

## COUNT VIII
## ALABAMA ANTITRUST LAW - STATUTE

63.     Plaintiffs repeat and reallege each and every allegation contained in paragraphs 1 through 62 above.

64.     This is an action under § 6-5-60 of the Alabama State Code.

65.     The relevant product market in this case is the health service and durable medical equipment leasing market.

66.     The relevant geographic market in this case is patients discharged from the Defendant hospitals.

67.     Defendants have engaged in a series of unlawful and wrongful antitrust activities and communications designed and succeeding to wilfully establish and maintain Defendants as a monopoly power in the durable medical equipment leasing market.

68.     Defendants possess monopoly power in the durable medical equipment leasing market in the above-referenced market.

69.     As a direct and proximate result of said acts of monopolization Plaintiffs have been injured in their business and property in that they and all other competitors

18

in the durable medical equipment leasing market have been foreclosed from doing business in the said market.

70.    The above-described monopolization threaten serious and irreparable harm to the durable medical equipment leasing market in the above-referenced market in that all present competitors are being forced out of business thereby creating an absolute and permanent monopoly for Defendants in the durable medical equipment leasing market.

WHEREFORE, Plaintiffs pray this Court enter judgment in their favor:

(a)    enjoining Defendants from further combining, contracting, conspiring or otherwise coercing or forcing the utilization of Defendants to the exclusion of all other competitors in the durable medical equipment leasing market;

(b)    ordering Defendants to cease and desist from all activities or communications designed to force or coerce the home health care agencies, nursing homes, doctors and patients to deal exclusively with the captive DME providers;

(c)    ordering Defendants to assign discharged patients to the respective home health care agencies in the area on a nondiscriminatory and nonpreferential basis;

(d)    awarding Plaintiffs treble their actual damages sustained as a direct and proximate cause of the aforesaid antitrust violations;

(e)    awarding Plaintiffs reasonable attorneys' fees;

(f)    awarding Plaintiffs costs of court; and

19

## PLAINTIFFS DEMAND A TRIAL BY STRUCK JURY

Respectfully submitted,

Brian M. Clark (CLA053)
*Attorney for Plaintiff*

OF COUNSEL:
**WIGGINS, CHILDS, QUINN AND PANTAZIS, L.L.C.**
The Kress Building
301 19th Street North
Birmingham, AL 35203
(205) 314-0500

**OF COUNSEL:**
Dwayne M. Brown, Esq.
Attorney at Law
Post Office Box 230205
Montgomery, Alabama 36106
(334) 277-3757

**PLAINTIFFS' ADDRESSES:**
**PRECISION CPAP, INC.**
c/o Brian M. Clark, Esq.
WIGGINS, CHILDS, QUINN AND PANTAZIS, L.L.C.
The Kress Building
301 19th Street North
Birmingham, AL 35203

**THE MEDICAL PLACE, INC.**
c/o Brian M. Clark, Esq.
WIGGINS, CHILDS, QUINN AND PANTAZIS, L.L.C.
The Kress Building
301 19th Street North
Birmingham, AL 35203

**EAST MEDICAL EQUIPMENT AND SUPPLY**
c/o Brian M. Clark, Esq.
WIGGINS, CHILDS, QUINN AND PANTAZIS, L.L.C.
The Kress Building
301 19th Street North
Birmingham, AL 35203

**MED-EX**
c/o Brian M. Clark, Esq.
WIGGINS, CHILDS, QUINN AND PANTAZIS, L.L.C.
The Kress Building
301 19th Street North
Birmingham, AL 35203

**PHASE III VANS, INC., d/b/a EAST MEDICAL**
**EQUIPMENT AND SUPPLY;**
c/o Brian M. Clark, Esq.
WIGGINS, CHILDS, QUINN AND PANTAZIS, L.L.C.
The Kress Building
301 19th Street North
Birmingham, AL 35203


**DEFENDANTS ADDRESSES:**
**Please Serve Defendants via Certified Mail at the Following Addresses:**

JACKSON HOSPITAL
c/o Donald Henderson
Chief Executive Officer
1722 Pine Street
Montgomery, Alabama 36106

MED-SOUTH, INC.
c/o Patrick William
President and CEO
406 Medical Center Drive
Jasper, Alabama 35501

JMS HEALTH SERVICES, L.L.C.,
d/b/a JACKSON MED-SOUTH HOME HEALTH, L.L.C.
c/o William T. Carlson, Jr.
1722 Pine Street
Montgomery, Alabama 36106

BAPTIST HEALTH, INC.
c/o W. Russell Tyner
President and CEO
P. O. Box 244001
Montgomery, Alabama 36124

AMERICAN HOME PATIENT, INC.
c/o Joseph F. Ferlong, III
President and CEO
5200 Maryland Way, Suite 400
Brentwood, Tennessee 37027

BAPTIST VENTURES-AMERICAN HOME PATIENT
c/o W. Russell Tyner
President and CEO
6240 Brubaker Boulevard
Montgomery, AL 36116