**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF ALABAMA**
**SOUTHERN DIVISION**

| | | |
|---|---|---|
| **PRECISION CPAP, INC.;** | ) | |
| **MEDICAL PLACE, INC.; PHASE III** | ) | |
| **VANS, INC., d/b/a EAST MEDICAL** | ) | |
| **EQUIPMENT AND SUPPLY; and** | ) | |
| **MED-EX,** | ) | |
| | ) | |
| **Plaintiffs.** | ) | **Civil Action No. 2:05-CV-1096-MHT-** |
| | | **DRB** |
| | ) | |
| | ) | |
| **v.** | ) | **JURY TRIAL DEMAND** |
| | ) | |
| **JACKSON HOSPITAL; MED-SOUTH,** | ) | |
| **INC.; JMS HEALTH SERVICES, L.L.C.,** | ) | |
| **d/b/a JACKSON MED-SOUTH HOME** | ) | |
| **HEALTH, L.L.C.; BAPTIST HEALTH,** | ) | |
| ** INC.;AMERICAN HOME PATIENT,** | ) | |
| **INC; BAPTIST VENTURES -** | ) | |
| **AMERICAN HOME PATIENT;** | ) | |
| | ) | |
| **Defendants.** | ) | |

## FIRST AMENDED COMPLAINT

Plaintiffs Precision CPAP, Inc.; Medical Place, Inc., Phase III Vans, Inc., d/b/a/ East

Medical Equipment and Supply, and Med-Ex, state the following as their Complaint in this action.

### JURISDICTION AND VENUE

1.      This Court has jurisdiction over this controversy under Federal question jurisdiction,

28

U.S.C. § 1331, because of the antitrust claims brought pursuant to 15 U.S.C. § § 1, 2, 15, and 26.

Plaintiffs specifically allege that the act complained of herein affect interstate commerce because

Plaintiffs purchase equipment for leasing from out of state, insurance payments are made for the equipment from out of sate, and government payment for equipment is made from out of state. Defendants' activities affect the flow pricing of goods in interstate commerce, the orders of those goods (how many are ordered), and how many reimbursements are made for DME equipment from out of state.

      2.      Venue is proper in this District under 28 U.S.C. § 1391(b) because this is a judicial district

in which a substantial part of the acts giving rise to the claim occurred.

## PARTIES

      3.      Plaintiff, Precision CPAP ("Precision CPAP"), is an Alabama corporation engaged in the

durable medical equipment ("DME") business in Montgomery, Alabama.  Generally speaking, the one business is the provision of medical devices needed for care in the homes of patients after discharge from the hospital.  The equipment is usually leased and include items such as hospital beds, walkers, wheelchairs, oxygen, and other durable medical devices.  Precision CPAP is not a "full-line" DME provider, but specializes in the provision or respiratory therapeutic services.  For purposes of this Complaint, the respiratory therapeutic services provided by Precision CPAP are included in the general term "DME".  Much of the equipment purchased for leasing is purchased from out of state suppliers, and insurance and government payments are made for the equipment from out of state.

      4.      Plaintiff The Medical Place, Inc. ("The Medical Place") is an Alabama corporation in

the DME business in Montgomery, Alabama.  The Medical Place is a "full line" DME supplier.

5.    Plaintiff, East Medical an Alabama corporation engaged in the DME business in Montgomery, Alabama, and is also a "full line" DME supplier.

6.    Plaintiff Med-Ex is an Alabama corporation formerly engaged in the DME business in

Montgomery, Alabama.  Med-Ex sold the assets of the business.  Prior to that sale, as outlined below, Med-Ex had suffered a great loss in revenue due to the practices of Defendants outlined below.  Another result of the practices outlined below is that the price of the assets sold was depressed due to the drop in revenues immediately prior to sale.

7.    Defendant Jackson Hospital is a hospital operating in Montgomery County, Alabama.

8.    Defendant Med-South, Inc., is a company that is in the DME business in the State of Alabama.

9.    Defendant Jackson-MedSouth HME, L.L.C. ("Jackson-MedSouth") is an Alabama Liability Company.  The members, or owners, of Jackson-MedSouth are Jackson Hospital and Med-South, Inc.

10.    Defendant Baptist Health is an Alabama corporation that operates Baptist Medical Center and Baptist Medical Center East in Montgomery, Alabama and Prattville Baptist Hospital in Prattville, Alabama.

11.    Defendant American Homepatient, Inc., is a corporation engaged in the DME business.

American Homepatient, Inc., has entered into a joint venture with Baptist Health to operate Baptist

3

Ventures-American Home Patient.

12.    Baptist Venture-American Homepatient ("Baptist/American Homepatient DME")
        is a joint

venture between Baptist Health, Baptist Ventures and American Homepatient. This joint venture

is in the DME business in Montgomery, Alabama.

**FACTS**

13.    Defendants Baptist Health and Jackson Hospital operate hospital facilities in

Montgomery and Prattville, Alabama. These two defendants are the source of the primary hospital

services for the majority of residents in the Montgomery, Alabama area, and their control over the

market for acute care hospital services is such that it rises to monopoly power.

14.    Upon discharge from one of the hospital defendant's facilities, many patients need

continuing nursing care, medical services and durable medical equipment. Some equipment and

services are provided by DME carriers such as Plaintiffs.

15.    Plaintiffs provide home health care services and home health care equipment to
        patients

in Montgomery and Prattville, Alabama. Plaintiffs compete in the DME business in and around

Montgomery, Alabama. In particular, Plaintiffs compete in the market to provide patients discharged

from Jackson Hospital and Baptist Health's hospital facilities with their DME needs.

16.    A vast majority of the DME business comes form patients who have been discharged
        from

hospitals, and have been prescribed durable medical equipment by their physician. Patients

discharged from Baptist and Jackson hospitals live primarily in Montgomery and Prattville,

4

Alabama. Because DME providers are aware that a great deal of their business comes from patients recently discharged from hospitals, DME providers, before they were excluded from the hospitals, focused their marketing efforts on hospital patients and hospital staff that assisted patients in procuring their DME needs.

17.     Because the market of hospital patients with DME needs is recognized by the industry as

a separate economic entity, and because such a large portion of DME business is made up of recently discharged hospital patients, the relevant product market in this case is the market for rental and sale of durable medical equipment to patients discharged from Jackson Hospital, Baptist Medical Center, and Baptist Medical Center East in Montgomery, and Prattville, Alabama. The market actors are aware of this submarket of business, and treat it accordingly by focusing market efforts on hospital patients and staff in an attempt to gain market share, particularly targeting staff who will ultimately arrange DME services.

18.     Alternatively, the relevant product market in this case is the market for the rental and sale

of durable medical equipment in Montgomery and Prattville, Alabama.

19.     Prior to the entry of "Captive DME's" into the market place, Plaintiff DME providers were

able to market themselves to hospital staff and patients whose discharge was imminent from the Defendant hospitals. Plaintiffs are now denied access to hospital patients by hospital policy.

20.      If there was no choice of a DME provider made by the hospital patients, prior to the formation of Jackson-MedSouth and Baptist/American Homepatient DME, when a patient was

5

discharged, the patient was assigned on a rotational basis to one of the DME providers such as Plaintiffs, to arrange for that patient's home health care needs.

21.     The custom and practice had been that when a patient was assigned a DME provider, either through the above-referenced assignment process, or through a specific request for a particular company, any durable medical equipment subsequently needed by the patient/customer would be leased from the same company.

22.     In the late 1990's Jackson and MedSouth formed Jackson-MedSouth, and entered into the DME market.   Similarly, Baptist Health, Baptist Ventures and American Homepatient, Inc., entered into a joint venture, creating Baptist/American Homepatient DME for the purpose of entering into the DME market and competing with Plaintiffs.

23.     Jackson, Med-South and Baptist/American Homepatient, DME, are captive DME providers.   That is, they are both owned and operated, and profits derived by, Baptist Health and Jackson Hospital.

24.     Part and parcel of the joint venture agreements between the hospitals and their captive

DME companies referenced above was that the hospitals and their captive DME companies would combine to restrict captive DME companies would combine to restrict access to the market for durable medical equipment sales and rentals to patients discharged from the hospitals's agreement that they would instruct case workers an staff only to they would instruct case workers and staff only to steer patients to the captive DME companies, and to deny Plaintiffs access to the hospital staff and patients.  The rotational system referenced herein was ceased, and Plaintiffs were no longer allowed to market to the hospital staff and patients.  Moreover, hospital staff continue to steer patients

needing DME to the captive DME companies. In essence, since Plaintiffs and other DME providers have been denied access, and the hospitals have informed patients that the captive DME companies can meet their needs, the patients in the market, with very few exceptions, know of only one choice for durable medical equipment–the captive DME companies. This strongly has worked because now the captive DMEs have such market share that they can cut services and/or raise prices without any corresponding drop in usage or revenues.

25.    The economic incentive for this agreement and activity is obvious. The hospitals enjoyed

the profits from their DME joint ventures, and the captive DME companies enjoyed exclusive access to the market, thus increasing the profitability of the companies the hospitals have a stake in.

26.    Following the entry by Defendants into the DME market through the above-referenced

entities, the Jackson Hospital and the Baptist Health hospitals ceased the rotational assignment of patients to DME providers. Instead, Defendants begin directing and/or assigning such patients to their captive DME companies, and excluding Plaintiffs the market of hospital patients discharged from the hospitals. This practice continues.

27.    For example, in the case of Jackson-MedSouth, hospital staff was specifically directed to

refer all hospital patients to Jackson-MedSouth. In a July 7, 2003 memo, hospital staff was informed that, "Only if the patient chooses another company, or it is an emergency should the patient be referred to another company." The economic incentive for Jackson to take this action is obvious, and the above-referenced memo confirms the purpose of these actions. The memo states, "Please

7

keep this in mind.  CPAP's we outsource affect our bottom line in the long run . . . remember, we are only hurting ourselves if we don't send to JMS when possible."  Similar measures were taken by Baptist Health to ensure that discharged hospital patients were directed, and are still directed to its captive DME supplier.

28.    Following the entry by Defendants into the DME market, Defendants have combined, contracted and/or conspired to create a monopoly and foreclose all vendors of DME from competing in the market for the provision of durable medical equipment to discharged hospital patients leaving Baptist Health and Jackson hospital facilities.

29.    Baptist East personnel have told Plaintiffs that they have an "obligation" to refer patients

only to Baptist/America Homepatient DME.  A representative for East Medical was specifically told this when the representative was attempting to market the company's services to hospital personnel responsible for managing DME referrals.  Other plaintiffs have experienced very similar rebukes in their attempt to market within the hospitals.

30.    Following the entry by Defendants into the DME market, Defendants have engaged in a

pattern of communications and actions foreclosing competition within the relevant market. That is, foreclosing competition for the business of discharged hospital patients from Baptist Medical Center, Baptist Medical Center East, and Jackson Hospital.

31.    In cases where the DME services are not covered by Medicare, the monopolistic practices of Defendants has foreclosed competition, and will lead to higher prices.  In the case where Medicare pays for the equipment, a lack of competition will eventually, and has already begun to

erode the services offered by the companies and the quality of the goods offered. Because there is no competition, the service offered to consumers of durable medical equipment will continue to erode.

32.    Following the entry by Defendants into the DME market, and as a result of the improper conduct related above, Plaintiffs have suffered a loss of revenue, as their referrals from hospital patients have almost vanished. In the case of Med-Ex, not only did the company lose revenues, but the sale price of the business was depressed.

## CAUSES OF ACTION

## COUNT I

## RESTRAINT OF TRADE - COERCIVE RECIPROCITY

33.    Plaintiffs repeat and reallege each and every allegation contained in paragraphs 1 through 32 above.

34.    This count arises under Section 1 of the Sherman Act, 15 U.S.C. § 1, and Sections 4 and 16 of the Clayton Act, 15 U.S.C. §§ 15 and 26.

35.    The contracts, combinations and/or conspiracies by and among Defendants whereby Defendant hospitals allocate the assignment of patients whose discharge is imminent to their captive DME providers and restrict access to hospital patients and staff, as referenced above, is  a coercive reciprocity agreement in violation of Section 1 of the Sherman Act, 15 U.S.C. § 1.

36.    The hospital defendants have exclusive control of a substantial share of hospital services and, accordingly, have the power to otherwise unduly influence the patients, doctors, nursing homes

9

or home health care agents' selection or recommendation of durable medical equipment vendors.

37.     Defendants continue to unlawfully exercise said power to coerce, pressure or otherwise

unduly influence the patients, doctors, nursing homes and home health care agents to select or recommend only the captive DME companies to the exclusion of Plaintiffs.

38.     As a direct and proximate result of the said coercive reciprocity agreement, Plaintiffs have been injured in their business and property in that they and all other competitors in the durable medical equipment leasing market have been foreclosed from doing business with patients discharged from Defendants hospitals.

39.     The contracts, combinations and/or conspiracies among the Defendants seriously threatening irreparable harm in that all present competitors of Defendants will be driven out of business thereby creating an absolute and permanent monopoly for Defendants in the DME market.

WHEREFORE, Plaintiffs pray that this Court enter judgment in their favor:

(a)     enjoining Defendants from further combining, contracting, conspiring or otherwise coercing or forcing the utilization of Defendants to the exclusion of all other competitors in the durable medical equipment leasing market;

(b)     ordering Defendants to cease and desist from all activities or communications designed to force or coerce the home health care agencies, nursing homes, doctors and patients to deal exclusively with the captive DME providers;

(c)     ordering Defendants to assign discharged patients to the respective home health care agencies in the area on a nondiscriminatory and nonpreferential basis;

(d)     awarding Plaintiffs treble their actual damages sustained as a direct and proximate cause of the aforesaid antitrust violations;

(e)     awarding Plaintiffs reasonable attorneys' fees;

10

(f)    awarding Plaintiffs costs of court; and

(g)    granting all other relief the Court deems just and proper.

## COUNT II

## CONCERTED REFUSAL TO DEAL

40.    Plaintiffs repeat and reallege each and every allegation contained in paragraphs 1 through 39 above.

41.    This is an action under Section 1 of the Sherman Act, 15 U.S.C. § 1, and Sections 4 and 16 of the Clayton Act, 15 U.S.C. §§ 15 and 26.

42.    The contracts, combinations and/or conspiracies by and among Defendants whereby Defendants have agreed or otherwise acted in concert to the exclusion of all other competitors in the durable medical equipment leasing market constitutes a concerted refusal to deal with Plaintiffs in violation of Section 1 of the Sherman Act, 15 U.S.C. § 1.  More specifically, the hospitals have refused to deal with Plaintiff in providing access to the above-referenced market.

43.    As a direct and proximate result of the aforesaid concerted refusal to deal, Plaintiffs have been injured in their business and property in that they have been foreclosed from doing business with patients discharged from Defendant hospitals.

44.    The contracts, combinations and/or conspiracies by and among Defendants seriously threatens irreparable harm in that all present competitors of Defendants in the DME market for patients discharged from Jackson Hospital and the Baptist Health hospitals will be driven out of business, thereby creating an absolute and permanent monopoly for Defendants in the DME sales and rental market.

WHEREFORE, Plaintiffs pray this Court enter judgment in their favor:

11

(a)    enjoining Defendants from further combining, contracting, conspiring or otherwise coercing or forcing the utilization of Defendants to the exclusion of all other competitors in the durable medical equipment leasing market;

(b)    ordering Defendants to cease and desist from all activities or communications designed to force or coerce the home health care agencies, nursing homes, doctors and patients to deal exclusively with the captive DME providers;

(c)    ordering Defendants to assign discharged patients to the respective home health care agencies in the area on a nondiscriminatory and nonpreferential basis;

(d)    awarding Plaintiffs treble their actual damages sustained as a direct and proximate cause of the aforesaid antitrust violations;

(e)    awarding Plaintiffs reasonable attorneys' fees;

(f)    awarding Plaintiffs costs of court; and

(g)    granting all other relief the Court deems just and proper.

## COUNT III
## MONOPOLIZATION

45.    Plaintiffs repeat and reallege each and every allegation contained in paragraphs 1 through 44 above.

46.    This is an action under Section 2 of the Sherman Act, 15 U.S.C. § 2, and Sections 4 and 16 of the Clayton Act, 15 U.S.C. §§ 15 and 26.

47.    The relevant product market in this case is the sale and rental of durable medical equipment for patients discharged from Jackson Hospital and the Baptist Health hospitals in Montgomery and Prattville, Alabama.  Alternatively, the relevant product market is the sale and rental of durable medical equipment in Montgomery and Prattville, Alabama.

12

48.    Defendants have engaged in a series of unlawful and wrongful activities and communications designed and succeeding to wilfully establish and maintain Defendants as a monopoly power in the durable medical equipment market.

49.    The captive DME companies and the hospitals, through their stake in the captive DME companies possesses monopoly power in the durable medical equipment leasing market for patients discharged from the above-referenced hospitals.

50.    As a direct and proximate result of said acts of monopolization, Plaintiffs have been injured in their business and property in that they and all other competitors in the durable medical equipment leasing market have been foreclosed from doing business in the said market.

51.    The above-described acts of monopolization threaten serious and irreparable harm to

the durable medical equipment leasing market defined above in that all present competitors of Defendants are being forced out of business thereby creating an absolute and permanent monopoly for Defendants.

WHEREFORE, Plaintiffs pray this Court enter judgment in their favor:

(a)    enjoining Defendants from further combining, contracting, conspiring or otherwise coercing or forcing the utilization of Defendants to the exclusion of all other competitors in the durable medical equipment leasing market;

(b)    ordering Defendants to cease and desist from all activities or communications designed to force or coerce the home health care agencies, nursing homes, doctors and patients to deal exclusively with the captive DME providers;

(c)    ordering Defendants to assign discharged patients to the respective home health care agencies in the area on a nondiscriminatory and nonpreferential basis;

(d)    awarding Plaintiffs treble their actual damages sustained as a direct and

13

proximate cause of the aforesaid antitrust violations;

(e)     awarding Plaintiffs reasonable attorneys' fees;

(f)     awarding Plaintiffs costs of court; and

(g)     granting all other relief the Court deems just and proper.

## COUNT IV

## ATTEMPTED MONOPOLIZATION

52.     Plaintiffs repeat and reallege each and every allegation contained in paragraphs 1 through

51 herein above.

53.     This is an action under Section 2 of the Sherman Act, 15 U.S.C. § 2 and Section

4 and 16 of the Clayton Act, 15 U.S.C. §§ 15 and 26.

54.     The relevant product market in this case is the sale and rental of durable medical equipment

for patients discharged from Jackson Hospital and the Baptist Health hospitals in Montgomery and Prattville, Alabama.  Alternatively, the relevant product market is the sale and rental of durable medical equipment in Montgomery and Prattville, Alabama.

55.     The relevant product market in this case is the sale and rental of durable medical equipment

for patients discharged from Jackson Hospital and the Baptist Health hospitals in Montgomery and Prattville, Alabama.  Alternatively, the relevant product market is the sale and rental of durable medical equipment in Montgomery and Prattville, Alabama.

56.     Defendants have engaged in a series of unlawful and wrongful activities and

14

communications designed and specifically intended to wilfully acquire or maintain for Defendants monopoly power in the durable medical equipment leasing market as described above.

57.     The above-described acts of attempted monopolization were and are specifically intended

to achieve monopoly power for Defendants in the durable medical equipment leasing market in the above-referenced market.

58.     Defendants possess sufficient monopoly power in the relevant market such that the aforesaid exclusionary acts create a dangerous probability of actual monopolization.

59.     As a direct and proximate result of said acts of attempted monopolization, Plaintiffs have

been injured in their business and property in that they have been substantially foreclosed from doing business in said market.

60.     The above-described acts of attempted monopolization threaten serious and irreparable

harm to the market described above in that all present competitors are being forced out of business, thereby creating an absolute and permanent monopoly for Defendants in the durable medical equipment leasing market.

WHEREFORE, Plaintiffs pray this Court enter judgment in their favor:

(a)     enjoining Defendants from further combining, contracting, conspiring or otherwise coercing or forcing the utilization of Defendants to the exclusion of all other competitors in the durable medical equipment leasing market;

(b)     ordering Defendants to cease and desist from all activities or communications designed to force or coerce the home health care agencies, nursing homes, doctors and patients to deal exclusively with the captive DME providers;

(c)     ordering Defendants to assign discharged patients to the respective home health care agencies in the area on a nondiscriminatory and nonpreferential basis;

(d)     awarding Plaintiffs treble their actual damages sustained as a direct and proximate cause of the aforesaid antitrust violations;

(e)     awarding Plaintiffs reasonable attorneys' fees;

(f)     awarding Plaintiffs costs of court; and

(g)     granting all other relief the Court deems just and proper.

<u>**COUNT V**</u>
<u>**CONSPIRACY TO MONOPOLIZE**</u>

61.     Plaintiffs repeat and reallege each and every allegation contained in paragraphs 1 through

60 above.

62.     This is an action under Section 2 of the Sherman Act, 15 U.S.C. § 2 , and Sections

4 and 16 of the Clayton Act, 15 U.S.C. §§ 15 and 16.

63.     The relevant product market in this case is the sale and rental of durable medical equipment

for patients discharged from Jackson Hospital and the Baptist Health hospitals in Montgomery and Prattville, Alabama.  Alternatively, the relevant product market is the sale and rental of durable medical equipment in Montgomery and Prattville, Alabama.

64.     The relevant product market in this case is the sale and rental of durable medical equipment

for patients discharged from Jackson Hospital and the Baptist Health hospitals in Montgomery and

16

Prattville, Alabama. Alternatively, the relevant product market is the sale and rental of durable medical equipment in Montgomery and Prattville, Alabama.

65.    Defendants have contracted, combined and conspired in a series of unlawful and wrongful

activities and communications with the specific intent to acquire or maintain for Defendants monopoly power in the durable medical equipment leasing market in violation of Section 2 of the Sherman Act, 15 U.S.C. § 2.

66.    As a direct and proximate result of said conspiracy to monopolize, Plaintiffs have been

injured in their business and property in that they and all other competitors in the durable medical equipment leasing market have been foreclosed from doing business in the said market.

67.    The above-described acts of conspiracy to monopolize threaten serious and irreparable harm to the durable medical equipment leasing market in the above-reference market in that all present competitors of Defendants are being forced out of business thereby creating an absolute and permanent monopoly for Defendants in the durable medical equipment leasing market.

WHEREFORE, Plaintiffs pray this Court enter judgment in their favor:

(a)    enjoining Defendants from further combining, contracting, conspiring or otherwise coercing or forcing the utilization of Defendants to the exclusion of all other competitors in the durable medical equipment leasing market;

(b)    ordering Defendants to cease and desist from all activities or communications designed to force or coerce the home health care agencies, nursing homes, doctors and patients to deal exclusively with the captive DME providers;

(c)    ordering Defendants to assign discharged patients to the respective home health care agencies in the area on a nondiscriminatory and nonpreferential basis;

(d)     awarding Plaintiffs treble their actual damages sustained as a direct and proximate cause of the aforesaid antitrust violations;

(e)     awarding Plaintiffs reasonable attorneys' fees;

(f)     awarding Plaintiffs costs of court; and

(g)     granting all other relief the Court deems just and proper.

## COUNT VI
## CONSPIRACY TO MONOPOLIZE

Plaintiffs repeat and reallege each and every allegation contained in paragraphs 1 through 67 above.

68.     This is a cause of action under Section 2 of the Sherman Act, 15 U.S.C. §2.

69.     Jackson Hospital, Baptist Medical Center, and Medical Center East are in control of the

hospitals they operate, and control such a share of the market as to have monopoly of the market for

acute care hospitals in Montgomery and Prattville, Alabama.

70.     These hospitals are essential facilities.  That is it is impracticable and impossible for

Plaintiffs and other DME providers to duplicate these hospital facilities.

71.     The hospitals have denied the use of their essential facilities to Plaintiffs for the purposes

of marketing their durable medical equipment which, as stated above, is the primary and largest

market for the sale and rental of durable medical equipment.

72.     It is feasible for Defendants to grant Plaintiff access to the hospitals, however, the decision

has been made to exclude Plaintiffs in order to monopolize the retail durable medical equipment

18

market.

73.     The above-referenced joint and separate acts of Defendants monopolize or alternatively

will lead to the monopolization of the market for durable medical equipment in the relevant

described above.

WHEREFORE, Plaintiffs pray this Court enter judgment in their favor:

(a)     enjoining Defendants from further combining, contracting, conspiring or otherwise coercing or forcing the utilization of Defendants to the exclusion of all other competitors in the durable medical equipment leasing market;

(b)     ordering Defendants to cease and desist from all activities or communications designed to force or coerce the home health care agencies, nursing homes, doctors and patients to deal exclusively with the captive DME providers;

(c)     ordering Defendants to assign discharged patients to the respective home health care agencies in the area on a nondiscriminatory and nonpreferential basis;

(d)     awarding Plaintiffs treble their actual damages sustained as a direct and proximate cause of the aforesaid antitrust violations;

(e)     awarding Plaintiffs reasonable attorneys' fees;

(f)     awarding Plaintiffs costs of court; and

(g)     granting all other relief the Court deems just and proper.

## COUNT VII
## ALABAMA ANTITRUST LAW - STATUTE

74.     Plaintiffs repeat and reallege each and every allegation contained in paragraphs 1 through

73 above.

75.     This is an action under § 6-5-60 of the Alabama State Code.

76.     The relevant product market in this case is the health service and durable medical

equipment leasing market.

77.    The relevant geographic market in this case is patients discharged from the Defendant hospitals.

78.    Defendants have engaged in a series of unlawful and wrongful antitrust activities and communications designed and succeeding to wilfully establish and maintain Defendants as a monopoly power in the durable medical equipment leasing market.

79.    Defendants possess monopoly power in the durable medical equipment leasing market in the above-referenced market.

80.    As a direct and proximate result of said acts of monopolization Plaintiffs have been injured in their business and property in that they and all other competitors in the durable medical equipment leasing market have been foreclosed from doing business in the said market.

81.    The above-described monopolization threaten serious and irreparable harm to the durable medical equipment leasing market in the above-referenced market in that all present competitors are being forced out of business thereby creating an absolute and permanent monopoly for Defendants in the durable medical equipment leasing market.

WHEREFORE, Plaintiffs pray this Court enter judgment in their favor:

(a)    enjoining Defendants from further combining, contracting, conspiring or otherwise coercing or forcing the utilization of Defendants to the exclusion of all other competitors in the durable medical equipment leasing market;

(b)    ordering Defendants to cease and desist from all activities or communications designed to force or coerce the home health care agencies, nursing homes, doctors and patients to deal exclusively with the captive DME providers;

(c)     ordering Defendants to assign discharged patients to the respective home
        health care agencies in the area on a nondiscriminatory and nonpreferential
        basis;

(d)     awarding Plaintiffs treble their actual damages sustained as a direct and
        proximate cause of the aforesaid antitrust violations;

(e)     awarding Plaintiffs reasonable attorneys' fees;

(f)     awarding Plaintiffs costs of court; and

(g)     granting all other relief the Court deems just and proper.


### PLAINTIFFS DEMAND A TRIAL BY STRUCK JURY


Respectfully submitted,


s/Brian M. Clark_____
Brian M. Clark (CLA053)
*Attorney for Plaintiff*


**OF COUNSEL**

**WIGGINS, CHILDS, QUINN AND PANTAZIS, L.L.C.**
The Kress Building
301 19th Street North
Birmingham, AL 35203
(205) 314-0500

### CERTIFICATE OF SERVICE

I hereby certify that I have served a copy of the foregoing via CMF Electronic Filing System and/or by U. S. Mail, properly addressed and postage prepaid upon the following:

James E. Williams, Esq.
Melton, espy & Williams, P.C.
301 Adams Avenue
Montgomery, Alabama 36104

Glenn B. Rose, Esq.
Harwell, Howard, Hyne, Gabbert
 & Manner, P.C.
315 Deaderick Street, Suite 1800
Nashville, Tennessee 37238

Dennis R. Bailey
Ruston, Stakely, Johnston
 & Garrett, P.A.
184 Commerce Street
Montgomery, Alabama 36104

Mike Carlson
William Carlson & Associates, P.C.
Post Office Box 660955
Birmingham, Alabama 35266

      Done this 3rd day of March, 2006.


                              s/Brian M. Clark
                              Of Counsel